[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *League of Women Voters of Ohio v. Ohio Redistricting Comm.,* Slip Opinion No. 2023-Ohio-4271.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION 2023-OHIO-4271

LEAGUE OF WOMEN VOTERS OF OHIO ET AL. *v.* OHIO REDISTRICTING COMMISSION ET AL.

BENNETT ET AL. *v.* OHIO REDISTRICTING COMMISSION ET AL.

OHIO ORGANIZING COLLABORATIVE ET AL. *v.* OHIO REDISTRICTING COMMISSION ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *League of Women Voters of Ohio v. Ohio Redistricting Comm.,* Slip Opinion No. 2023-Ohio-4271.]

*Redistricting—Original actions under Ohio Constitution, Article XI—Districting plan adopted with bipartisan support is a changed circumstance that makes it appropriate for this court to relinquish continuing jurisdiction—Respondents' motions to dismiss granted—Respondents' motions to vacate denied as moot—Petitioners' motions for leave to file objections instanter denied.*

(Nos. 2021-1193, 2021-1198, and 2021-1210—Submitted November 17, 2023—Decided November 27, 2023.)

ON MOTIONS FOR LEAVE TO FILE INSTANTER OBJECTIONS AND MOTIONS TO DISMISS AND TO VACATE.

**Per Curiam.**

{¶ 1} On September 29, 2023, respondent Ohio Redistricting Commission adopted a General Assembly-districting plan ("the September 2023 plan"). The September 2023 plan was passed with bipartisan support and is therefore effective through the 2030 election cycle. *See* Article XI, Section 8(B), Ohio Constitution. Despite the bipartisan support for the September 2023 plan, petitioners in these cases have filed motions for leave to file objections instanter to the plan.[1]

{¶ 2} In addition to opposing petitioners' motions for leave to file objections, three respondents, Senator Robert McColley, Representative Jeffrey LaRe, and Secretary of State Frank LaRose, all members of the commission, filed motions to dismiss these cases and to vacate this court's orders declaring unconstitutional the General Assembly-districting plan adopted in September 2021 and the four plans subsequently adopted.

{¶ 3} For the reasons that follow, we grant the motions to dismiss, deny the motions to vacate as moot, and deny the motions for leave to file objections to the September 2023 plan.

## I. BACKGROUND

### A. The Complaints and Previous Decisions

{¶ 4} These cases originated with complaints alleging that the General Assembly-districting plan adopted in September 2021 was unconstitutional. Petitioners alleged that the commission did not comply with Article XI, Sections 6(A) and 6(B) of the Ohio Constitution, which require the commission to attempt

---

1. Petitioners in case No. 2021-1193 are League of Women Voters of Ohio, A. Philip Randolph Institute of Ohio, Tom Harry, Tracy Beavers, Bonnie Bishop, Valerie Lee, Iris Meltzer, and Sherry Rose. Petitioners in case No. 2021-1198 are Bria Bennett, Regina C. Adams, Kathleen M. Brinkman, Martha Clark, Susanne L. Dyke, Meryl Neiman, Holly Oyster, Constance Rubin, and Everett Totty. Petitioners in case No. 2021-1210 are the Ohio Organizing Collaborative, the Ohio chapter of the Council on American-Islamic Relations, Ohio Environmental Council, Ahmad Aboukar, Crystal Bryant, Samuel Gresham Jr., Prentiss Haney, and Pierrette Talley.

to draw a plan that meets certain standards of partisan fairness.[2] Respondents contended that this court lacks the constitutional authority to adjudicate independent claims for violations of Article XI, Section 6 of the Ohio Constitution.

{¶ 5} The September 2021 plan was adopted by a five-to-two vote of the commission, with both Democratic members of the commission opposed to it. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 167 Ohio St.3d 255, 2022-Ohio-65, 192 N.E.3d 379, ¶ 24 ("*League I*"). This court invalidated the September 2021 plan, finding that it did not comply with Article XI, Sections 6(A) and 6(B) of the Ohio Constitution. *Id.* at ¶ 2, 135, 138. In addition, we ordered the commission to be reconstituted and to adopt a new plan in conformity with the Ohio Constitution. *Id.* at ¶ 138. We also retained jurisdiction for the purpose of reviewing the new plan. *Id.* at ¶ 139.

{¶ 6} In four subsequent cases, this court invalidated plans adopted by the commission in response to this court's decisions. *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 168 Ohio St.3d 28, 2022-Ohio-342, 195 N.E.3d 974, ¶ 67 ("*League II*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 168 Ohio St.3d 309, 2022-Ohio-789, 198 N.E.3d 812, ¶ 2 ("*League III*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 168 Ohio St.3d 374, 2022-Ohio-1235, 199 N.E.3d 485, ¶ 2 ("*League IV*"); *League of Women Voters of Ohio*

---

2. Article XI, Sections 6(A) and (B) of the Ohio Constitution provide:

> The Ohio redistricting commission shall attempt to draw a general assembly district plan that meets all of the following standards:
>
> (A) No general assembly district plan shall be drawn primarily to favor or disfavor a political party.
>
> (B) The statewide proportion of districts whose voters, based on statewide state and federal partisan general election results during the last ten years, favor each political party shall correspond closely to the statewide preferences of the voters of Ohio.

*v. Ohio Redistricting Comm.*, 168 Ohio St.3d 522, 2022-Ohio-1727, 200 N.E.3d 197, ¶ 5 ("*League V*"). Each time, the plan that this court reviewed had not been passed with bipartisan support. In each case, we ordered the commission to be reconstituted and to adopt a new plan in conformity with the Ohio Constitution. *League II* at ¶ 67; *League III* at ¶ 44; *League IV* at ¶ 78; *League V* at ¶ 5. As in *League I*, we retained jurisdiction for the limited purpose of reviewing the new plans adopted by the commission. *See League II* at ¶ 68; *League III* at ¶ 45; *League IV* at ¶ 79; *League V* at ¶ 6.

{¶ 7} In the last of this court's decisions, the commission was ordered to submit a new plan by June 3, 2022. *League V* at ¶ 6-7. The commission did not submit a new plan by that date. Instead, by order of the federal district court in *Gonidakis v. LaRose*, 599 F.Supp.3d 642 (S.D.Ohio 2022), the plan that this court had found unconstitutional in *League III* was used for the 2022 election. *Gonidakis* at 678-679; *see League V* at ¶ 2.

## B. The Commission Adopts the September 2023 Plan

{¶ 8} The commission eventually adopted a new redistricting plan on September 26, 2023. Unlike the plans that were before us in *League I*, *II*, *III*, *IV*, and *V*, the September 2023 plan was adopted by a unanimous vote of the commission. On September 29, the commission approved an amendment to the plan by a six-to-zero vote, with one member not present. House Minority Leader Allison Russo proposed the amendment to the plan, and both Democratic members of the commission voted in favor of the amended plan. Because the plan received bipartisan support, it is effective until 2031—that is, through the 2030 general election for state representatives and senators. *See* Article XI, Section 8(B), Ohio Constitution.

{¶ 9} On October 5, petitioners in all three cases filed motions for leave to file instanter objections to the September 2023 plan. Attached to all three motions are petitioners' proposed objections to the September 2023 plan. All petitioners argue that the September 2023 plan, despite the approval of the commission's Democratic members, is a partisan gerrymander that violates Article XI, Section 6(B) of the Ohio Constitution. Senator McColley and Representative LaRe filed a memorandum in opposition to the

motions for leave, which includes responses to petitioners' objections. Respondents Governor Mike DeWine, Auditor Keith Faber, Secretary LaRose, and the commission filed a separate opposition incorporating all arguments asserted in Senator McColley and Representative LaRe's opposition. Senate Minority Leader Nickie J. Antonio and House Minority Leader Russo also filed a response to petitioners' motions for leave, asking for a reasonable amount of time to respond to petitioners' objections if we allowed the objections to be filed.

{¶ 10} In addition to their opposition to petitioners' motions, Senator McColley and Representative LaRe filed a "motion to dismiss and vacate." The motion asks us to dismiss all of petitioners' cases and vacate the orders issued in each of the five *League* decisions. Petitioners timely filed oppositions to Senator McColley and Representative LaRe's motion to dismiss and vacate. On the same day that petitioners filed their responses, Secretary LaRose filed a separate motion to dismiss and vacate, joining Senator McColley and Representative LaRe's arguments. Petitioners filed responses opposing the secretary's motion.

{¶ 11} The matter is before this court for disposition of the parties' motions.

## II. ANALYSIS

{¶ 12} Senator McColley, Representative LaRe, and Secretary LaRose argue that we should now dismiss these cases because there is no longer an operative complaint before us that corresponds to the September 2023 plan adopted by the commission for use in the 2024-through-2030 election cycles. We agree and grant the motions to dismiss on this basis.

{¶ 13} The allegations of the three complaints in these cases were tied specifically to the process that led to the September 2021 plan and its adoption by a party-line vote. Indeed, all three complaints contained allegations of an unduly partisan process that led to the commission's adoption of a map without bipartisan support. The unduly partisan process, according to the allegations in petitioners' complaints, led to an unduly partisan map that violated Article XI, Sections 6(A) and 6(B) of the Ohio Constitution. And because the September 2021 plan did not receive the support of either member of the

minority party, the plan was to remain in effect only "until two general elections for the house of representatives have occurred under the plan"—i.e., four years. Article XI, Section 8(C)(1)(a), Ohio Constitution.

{¶ 14} The September 2023 plan stands on entirely different footing than the plan challenged in the complaints and each of the plans the commission adopted in response to this court's decisions in *League I*, *II*, *III*, and *IV*. None of the plans we reviewed in last year's decisions received bipartisan support. In contrast to those plans, the September 2023 plan was adopted with bipartisan support and without resort to the impasse procedures set forth in Article XI, Section 8(C) of the Ohio Constitution. The bipartisan support for the September 2023 plan means that it is effective for the 2024-through-2030 election cycles.

{¶ 15} The bipartisan adoption of the September 2023 plan is a changed circumstance that makes it appropriate to relinquish our continuing jurisdiction over these cases. The divided party-line vote of the commission in its adoption of the September 2021 plan, as well as the commission's alleged unduly partisan process, was the foundation of petitioners' complaints. The theory that the commission's actions were tainted by a partisan divide continued to be at the forefront of petitioners' objections to later plans adopted in response to our orders in *League I*, *II*, *III*, and *IV*. That landscape has changed with the adoption of the September 2023 plan by a bipartisan vote.

{¶ 16} Moreover, this court's original jurisdiction is limited to "cases arising under" Article XI of the Ohio Constitution. Article XI, Section 9(A), Ohio Constitution. Nothing in the Ohio Constitution grants this court blanket oversight authority over the commission. Rather, our jurisdiction depends on a properly filed complaint that alleges specific violations of the constitutional provisions for which a remedy is sought.

{¶ 17} Now that the commission has adopted a plan with bipartisan support, the facts currently before us bear no resemblance to the allegations in petitioners' complaints. We therefore dismiss these cases, rendering moot respondents' motions to vacate. We express no view on the merits of petitioners' proposed objections to the September 2023 plan or on respondents' arguments in opposition to those objections.

### III. CONCLUSION

**{¶ 18}** For the foregoing reasons, we grant the motion to dismiss filed by Senator McColley and Representative LaRe and the motion to dismiss filed by Secretary LaRose. We deny as moot their motions to vacate our orders in *League I*, *II*, *III*, *IV*, and *V*. Because we dismiss these cases, we also deny petitioners' motions for leave to file objections instanter to the September 2023 plan. Our decision today means that these cases are not the appropriate vehicles for addressing challenges to the September 2023 plan.

Causes dismissed.

KENNEDY, C.J., and FISCHER, DEWINE, and DETERS, JJ., concur.

BRUNNER, J., dissents, with an opinion joined by DONNELLY and STEWART, JJ.

––––––––––––––––––

**BRUNNER, J., dissenting.**

**{¶ 19}** On May 25, 2022, for the fifth time, we invalidated a General Assembly-district plan adopted by respondent Ohio Redistricting Commission because the plan failed to comply with the anti-gerrymandering provisions of Article XI, Section 6 of the Ohio Constitution. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 168 Ohio St.3d 522, 2022-Ohio-1727, 200 N.E.3d 197 ("*League V*"). We also ordered the commission to reconvene to adopt a constitutionally compliant plan and to file the new plan in this court no later than 12:00 p.m. on June 3, 2022. *Id.* at ¶ 5-6. We retained "jurisdiction for the purpose of reviewing the new plan" adopted by the commission, *id.* at ¶ 6, and ordered that any objections to the new plan be filed by 12:00 p.m. on June 7, 2022, and that any responses thereto be filed by 12:00 p.m. on June 9, 2022, *id.* at ¶ 7.

**{¶ 20}** On September 29, 2023, the commission adopted a new redistricting plan and filed it on October 2, 2023—16 months after the deadline imposed by this court. On October 5, petitioners sought leave to file objections to the plan because the deadline for their objections had expired. They also submitted their proposed objections, in which they argue that the new plan violates Article XI, Section 6(B) in the same manner as the plans previously invalidated by this court. Petitioners are entitled to file their objections.

**{¶ 21}** We have found five times that district maps produced by the commission violated Article XI, Section 6 of the Ohio Constitution. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 167 Ohio St.3d 255, 2022-Ohio-65, 192 N.E.3d 379, ¶ 2 ("*League I*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 168 Ohio St.3d 28, 2022-Ohio-342, 195 N.E.3d 974, ¶ 67 ("*League II*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 168 Ohio St.3d 309, 2022-Ohio-789, 198 N.E.3d 812, ¶ 2 ("*League III*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 168 Ohio St.3d 374, 2022-Ohio-1235, 199 N.E.3d 485, ¶ 2 ("*League IV*"); *League V* at ¶ 5. We have set forth clear guidance on how the commission could produce constitutionally compliant maps. *See League I* at ¶ 105 (explaining how to determine the proportions of voters within each district that favor a particular political party); *id*. at ¶ 106 (describing how to properly calculate the statewide partisan preferences of Ohio voters); and *id*. at ¶ 111 (explaining that Article XI, Section 6(B) requires all members of the commission to attempt to draw a plan that "corresponds closely" with Ohio voters' preferences). In each decision, we retained jurisdiction and gave the commission reasonable deadlines for submitting new plans so that Ohio elections could be conducted with constitutionally compliant maps. *See League I* at ¶ 139; *League II* at ¶ 68; *League III* at ¶ 45; *League IV* at ¶ 79; *League V* at ¶ 6.

**{¶ 22}** But the commission has never appeared to be willing or capable of complying with our orders or the Ohio Constitution. Instead, it has taken the unprecedented position of refusing our orders, delaying these cases, and disobeying our deadlines. *See League V* at ¶ 10 (O'Connor, C.J., concurring) (describing the commission's actions in these cases as "a stunning rebuke of the rule of law").

**{¶ 23}** The commission was also given a deadline of May 28, 2022, by a federal court to implement a plan that complied with the Ohio Constitution. *See Gonidakis v. LaRose*, 599 F.Supp.3d 642, 647 (S.D.Ohio 2022). But the commission again employed its disobey-and-delay scheme, and as a result, Ohioans were forced to vote in a special August 2022 primary election using unconstitutional district maps. Now, having delayed the filing of a new plan in this court until well past the June 2022 deadline, the commission is seeking to avoid further review by obtaining a dismissal of the action.

{¶ 24} There is no procedural or legal basis for granting the motions to dismiss petitioners' complaints. On each prior occasion, we issued a final decision and retained jurisdiction for remedial purposes—i.e., for the purpose of reviewing "the new plan" to be adopted by the commission. *League I*, 167 Ohio St.3d 255, 2022-Ohio-65, 192 N.E.3d 379, at ¶ 139; *League II*, 168 Ohio St.3d 28, 2022-Ohio-342, 195 N.E.3d 974, at ¶ 68; *League III*, 168 Ohio St.3d 309, 2022-Ohio-789, 198 N.E.3d 812, at ¶ 45; *League IV*, 168 Ohio St.3d 374, 2022-Ohio-1235, 199 N.E.3d 485, at ¶ 79; *League V*, 168 Ohio St.3d 522, 2022-Ohio-1727, 200 N.E.3d 197, at ¶ 6. The commission may disagree with petitioners' objections substantively, but we have already issued an order permitting objections to be filed, *League V* at ¶ 7, and the only reason petitioners are required to seek permission to file their objections is because of the commission's delay in filing its "new plan" in this court.

{¶ 25} It is illusory to suggest that a bipartisan vote to adopt the September 2023 plan constitutes a change in circumstances that somehow diminishes our review power or renders a unanimous redistricting plan constitutionally compliant. There is nothing in Article XI, Section 6 that suggests that bipartisan agreement on a plan renders it presumptively constitutional, and we have flatly rejected that idea. *See League I* at ¶ 111 ("even if commission members of the minority party agreed to a proposed plan, this does not necessarily mean that the agreed-upon plan would comply with Section 6"). It is incumbent on this court, especially given the commission's track record and the law of the case ordering continuing jurisdiction, to review the September 2023 plan for its constitutionality—period. The petitioners in case No. 2021-1198 argue in their proposed objections that the September 2023 plan's proportionality defects are on par with those of the plans this court has previously invalidated. And the fact that the September 2023 plan received unanimous support is unavailing. As the petitioners in case No. 2021-1193 have noted in their proposed objections, "[n]othing has changed [since *League V*] except for the composition of this Court."

{¶ 26} The majority's reliance on the finding that "the facts currently before us bear no resemblance to the allegations in the petitioners' original complaint," majority opinion, ¶ 17, because of unanimous approval by the commission, simply misses the basic,

elemental mark of our duty. It is not our role to cede or even ignore our duty to review plans that affect how public policy is made for the next four, six, or ten years. The constitutional power we must exercise is to ensure fairness in the election of those whose power it is to devise public policy for the voters of this state, by reviewing redistricting plans for compliance with constitutional requirements. Article XI, Section 9(D)(3)(c), Ohio Constitution.

{¶ 27} Under current constitutional provisions, the same elected officials who are responsible for making policy on topics ranging from crimes and sentencing to limits on damages in lawsuits to environmental protections to small business regulations—and more—have the power to draw the boundaries of their own districts from which they are elected. When the fairness of legislative-district maps is in contention, the last thing we should do is to essentially bless a unanimous deal between the state's major political parties and permit it to go constitutionally unchecked. Even if petitioners were to file a new action following this court's dismissal, we are relegating our constitutional role to little more than a two-bit player in furthering the delay already embedded in the history of this case.

{¶ 28} Statutorily, a December candidate-filing deadline looms. Dragging our feet kicks the can down the road and disincentives a true review of a plan that is now squarely before us. A later review will bring with it a likelihood of entrenchment of district lines and a sky-is-falling cry that there's not enough time to change district lines before the candidate-filing deadline in December 2023, even though the General Assembly-district plan now in place still may not yet comport with constitutional requirements. And this is especially so given the General Assembly's passage of Sub.H.B. No. 458, effective April 23, 2023, which, unlike in 2022, prevents an August special election in 2024 for a delayed legislative primary election. *See* R.C. 3501.022. That the commission waited to comply with this court's standing order to file a new plan in this court until October 2, 2023, is suspect. Today we accede to its delay, all because everyone played nice.

{¶ 29} Procedurally, we have few to no facts before us. With due respect, the majority is not focusing on the arguments raised in petitioners' objections through the lens of our continuing jurisdiction over these cases. Instead, the majority wishes to relinquish jurisdiction and will, at the very least, no longer be bound by the law of the case when it

comes to later filings. Worse, the majority's ruling granting the motions to dismiss telegraphs to the public that this court does not care whether the maps are constitutional. Focusing only on the facts included in the original complaints that alleged an unduly partisan process, *see* majority opinion at ¶ 13, is a convenient ruse. There is little to no dispute that such facts were alleged and that we found beyond a reasonable doubt that earlier plans unconstitutionally favored the Republican Party or disfavored the Democratic Party under Article XI, Section 6(A). *League I*, 167 Ohio St.3d 255, 2022-Ohio-65, 192 N.E.3d 379, at ¶ 131.

{¶ 30} But in their complaints and throughout the proceedings, petitioners also have argued that the commission's plan, itself, violated Article XI, Section 6(B), having been drawn primarily to favor the Republican Party, *League I* at ¶ 81, and that the proportions of the partisan voters in the districts did not " 'closely correspond' " with the preferences of Ohio voters, *League II*, 168 Ohio St.3d 28, 2022-Ohio-342, 195 N.E.3d 974, at ¶ 55, quoting Article XI, Section 6(B). In the prayer for relief in their complaints, petitioners did not seek a bipartisan plan—they sought a plan that was constitutionally compliant. And they asked this court to retain jurisdiction not to dictate the procedures but to determine the validity of any new redistricting plans. Petitioners' subsequent objections contained these same allegations, and our decisions invalidating each of the five prior plans have been based on our findings that the plans violated both Section 6(A) and 6(B). *See League I* at ¶ 138; *League II* at ¶ 67; *League III*, 168 Ohio St.3d 309, 2022-Ohio-789, 198 N.E.3d 812, at ¶ 48; *League IV*, 168 Ohio St.3d 374, 2022-Ohio-1235, 199 N.E.3d 485, at ¶ 78; *League V*, 168 Ohio St.3d 522, 2022-Ohio-1727, 200 N.E.3d 197, at ¶ 4.

{¶ 31} The fact that petitioners' objections, for the first time, do not rely on Article XI, Section 6(A) and seek review only of the proportionality requirement under Section 6(B) does not make the September 2023 plan less reviewable or more constitutional. The nature of our continuing jurisdiction envisions that circumstances will change or progress as the parties try to comply with this court's orders. For example, in the context of low achieving schools and racially unbiased discipline policies in the city of Cincinnati in the early 1990s, a federal district court refused to relinquish its continuing jurisdiction under a consent decree in order to "insure that the plans now in effect will be allowed to

demonstrate a reasonable probability of achieving the broad policy behind the [parties'] settlement," *Bronson v. Bd. of Edn.*, S.D.Ohio No. C-1-74-205, 1991 U.S. Dist. LEXIS 21770, *48 (June 26, 1991). More specifically, the federal court sought "answers to the questions of whether the latest Board plan for unbiased disciplinary policies can be successful and of whether the seeming statistical disparity between black and white suspensions is evidence of a biased disciplinary policy on the one hand or subject to a rational explanation on the other." *Id.* at *40-41. In short, continuing jurisdiction *anticipates* incremental change. Thus, it is not unusual or unexpected that petitioners would now make objections under Section 6(B) only. And to the extent that petitioners object to the commission's plan under Section 6(B), these cases have the same posture as during the preceding reviews we have conducted, and they involve the same concerns originally raised by petitioners in their complaints.

{¶ 32} The majority's decision amounts to a permission slip to ignore the constitution and is yet another disappointing milepost in this litigation. The majority's decision hazards conveying to the public that we are reticent to fulfill our constitutional duty to review state legislative-redistricting plans to ensure their inherent coherence with constitutional requirements for fair legislative representation. The majority's decision also hazards engendering a corresponding disappointment by citizens in our branch of government—the judiciary—furthering malaise, mistrust, and the perception that nothing changes in state government, except for the worse. Today's order permits the commission to continue to deny Ohioans their constitutional right to fair voting districts. By first delaying and disobeying this and a federal court's orders, then by holding special primary and general elections in 2022 using unconstitutional districts, and now by cutting a unanimous, bipartisan deal for a plan that is still alleged to not meet constitutional requirements, the General Assembly is not giving Ohio voters what they bargained for when they said "yes" to ballot issues in 2015 and 2018 to change Ohio's constitutionally directed redistricting process.

{¶ 33} For the foregoing reasons, I would deny the motions to dismiss and the

motions to vacate and would grant petitioners' request for leave to file objections.[3]

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

––––––––––––––––––

ACLU of Ohio Foundation, Inc., Freda J. Levenson, and David J. Carey; American Civil Liberties Union and Julie A. Ebenstein; and Covington & Burling, L.L.P., Robert D. Fram, and Yale Fu, for petitioners in case No. 2021-1193.

McTigue & Colombo, L.L.C., and Donald J. McTigue; and Elias Law Group, L.L.P., Abha Khanna, Ben Stafford, and Jyoti Jasrasaria, for petitioners in case No. 2021-1198.

Reed Smith, L.L.P., Peter M. Ellis, M. Patrick Yingling, Brian A. Sutherland, and Danielle L. Stewart; and Brennan Center for Justice at New York University School of Law, Alicia L. Bannon, and Yurij Rudensky, for petitioners in case No. 2021-1210.

Dave Yost, Attorney General, and Taft Stettinius & Hollister, L.L.P., W. Stuart Dornette, Beth A. Bryan, and Philip D. Williamson, special counsel to Attorney General Dave Yost, for respondents Senator Robert McColley and Representative Jeffrey LaRe.

Dave Yost, Attorney General, and Michael J. Hendershot, Deputy Solicitor, Julie M. Pfeiffer, Jonathan Blanton, and Michael A. Walton, Assistant Attorneys General, for respondents Ohio Governor Mike DeWine, Ohio Secretary of State Frank LaRose, and Ohio Auditor Keith Faber.

Cooper Elliott, C. Benjamin Cooper, Charles H. Cooper Jr., and Chelsea C. Weaver, for respondents Senate Minority Nickie J. Antonio and House Minority Leader Allison Russo.

––––––––––––––––––––––––

––––––––––––––––––––

3. I would also grant respondents Senate Minority Leader Nickie Antonio and House Minority Leader Allison Russo ten days to submit any responses to the objections.